**SO ORDERED.**

**SIGNED this 02 day of March, 2007.**



*Dale L. Somers*
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| KEVIN MICHAEL WEDMAN, <br> RACHEL JOLENE WEDMAN, | CASE NO. 05-10167-7 <br> CHAPTER 7 |
| DEBTORS. | |
| J. MICHAEL MORRIS, Trustee, | |
| PLAINTIFF, | |
| v. | ADV. NO. 05-5098 |
| CONSECO FINANCE SERVICING CORP., | |
| DEFENDANT. | |

**OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, AND DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

This proceeding is before the Court on the defendant's motion for summary

judgment, and the plaintiff-trustee's cross-motion for summary judgment. Defendant Green Tree Servicing, L.L.C., formerly known as Conseco Finance Servicing Corporation ("Green Tree"[1]), appears by counsel John F. Michaels. Plaintiff-trustee J. Michael Morris ("the Trustee") appears personally and also as attorney for the Trustee, along with co-counsel Sarah L. Newell. The Court has reviewed the relevant materials and is now ready to rule.

The Trustee is making alternative claims for relief: (1) contending Green Tree's security interest in a manufactured home owned by the Debtors was not properly perfected under Kansas law, he seeks to avoid the lien and preserve it for the bankruptcy estate; and (2) contending the transaction that created the Debtors' interest in the manufactured home was fraudulent and void, he seeks to recover payments the Debtors made to Green Tree under a loan they assumed when they obtained their interest in the home. After considering the uncontroverted facts, the Court concludes (1) Green Tree's security interest was properly perfected and the Trustee cannot avoid it, and (2) the transaction in which the Debtors obtained their interest in the home was not void.

**FACTS**

Except where indicated, the following facts are not disputed. In 1999, Robert Suttles bought a manufactured home with financing provided by Green Tree. He gave a

---

[1]The relevant events in this case all involved predecessors of Green Tree, but the parties do not suggest any of the changes or transfers that led to Green Tree's present position as the holder of a lien on the debtors' manufactured home has any effect on the questions the Court is deciding. Consequently, the Court will simply use "Green Tree" to refer to all the predecessors that were involved in the events at the time they occurred.

lien on the home to secure the financing, and the lien in Green Tree's name was properly perfected by being noted on a certificate of title that was issued for the home in 1999. The Trustee does not question the propriety of Mr. Suttles's transaction with Green Tree.

In February 2002, Mr. Suttles transferred his ownership of the home to Kevin and Rachel Wedman ("the Debtors"), who also assumed his obligations on Green Tree's loan and lien. Green Tree appears to have supplied the form documents that were completed to evidence this transaction ("the Assumption Transaction").[2] The main document is a three-page one labeled "Manufactured Home Transfer of Equity and Assumption Agreement." It identifies Mr. Suttles as the "manufactured home seller," the Debtors as the "new buyer[s]," Green Tree as the "assignee," and Mr. Suttles's original contract to buy the home as "the contract." The first page of the form contains a boxed area labeled "Federal Truth-in-Lending Act Disclosures" that includes the statement: "SECURITY: I am giving a security interest in the goods or property being purchased." The second page of the form includes these provisions:

> 2. TRANSFER OF EQUITY: The Manufactured Home Seller hereby sells all of his/her equity, right, title and interest in the Manufactured Home to the New Buyer[s], subject to the security interest in favor of the Assignee.

---

[2]Green Tree complains that the Trustee has not properly presented the supporting documents he attached to his response and counter-motion for summary judgment. The Court agrees that the Trustee has not authenticated the documents as required to show they would be admissible at trial, *see* 10A Wright, Miller & Kane, *Federal Prac. & Pro.: Civil 3d*, § 2722 at 382-84 (1998). The Trustee's mere assertion in his reply to Green Tree's motion to strike that Green Tree produced the documents during discovery is likewise insufficient to show the documents would be admissible at trial. Nevertheless, the Court is convinced that the Trustee's theories of recovery are deficient in this case, even assuming the documents would be admissible at trial, and has therefore assumed the documents would be admissible and considered them in reaching its resolution of the parties' dispute.

3

> 3. ASSUMPTION OF CONTRACT: The New Buyer[s] hereby assume[] and promise[] to pay the amounts owing under the Contract, . . ., and agree[] to be bound by and to perform all other obligations under the Contract, the terms and conditions of which are hereby made a part hereof and otherwise expressly incorporated herein by reference. Accordingly, as of the date of this Agreement, the New Buyer[s] promise[] to pay to the Assignee $49,710.85 . . . .

In a bill of sale prepared at the same time as the assumption agreement, Mr. Suttles promised that the manufactured home was free of all encumbrances except for Green Tree's lien. Aetna Mobile Home Sales of Wichita, a manufactured home dealer, helped the parties with the Assumption Transaction and was paid a commission of $1,800.

No new certificate of title was issued for the home in connection with the Debtors' purchase of the home and assumption of the loan. Presumably, none of the parties to the transaction ever applied for one. Instead, the title records of the Kansas Department of Revenue, Division of Vehicles, continue to show Mr. Suttles as the owner of the home and Green Tree as the holder of a lien on the home. The Trustee has produced no evidence that would suggest Green Tree ever executed a lien release on the certificate of title that was issued for the home in Mr. Suttles's name. Nothing has been presented to indicate whether Mr. Suttles delivered an assigned certificate of title to the Debtors as part of the Assumption Transaction. Nevertheless, the Trustee assumes Mr. Suttles did not give the Debtors a certificate of title, and Green Tree does not contest that assumption.

In support of its motion for summary judgment, Green Tree submitted an affidavit signed by Bob Calvert, Green Tree's regional manager. In it, Mr. Calvert swears he has personal knowledge of various matters relevant to this case. The Trustee responds that

4

Mr. Calvert does not appear to have personal knowledge of the facts asserted in the affidavit because in answering an interrogatory, Green Tree did not list him as a Green Tree officer, employee, or agent "who in any way participated in the negotiation and/or execution of the Manufactured Home Transfer of Equity and Assignment Agreement of 2/28/02 between debtors, Suttles, and [Green Tree]." The Court finds the Trustee's interrogatory and Green Tree's response are not sufficient to establish that Mr. Calvert could not have personal knowledge of the facts he asserts in his affidavit. Therefore, the Court concludes Mr. Calvert's assertions are uncontroverted, including his assertions that: (1) Green Tree was never the holder of the certificate of title that was issued in Mr. Suttles's name; (2) Green Tree never possessed the certificate of title issued in Mr. Suttles's name; and (3) from the time Mr. Suttles bought the home until the Debtors filed their bankruptcy petition, Green Tree never owned the home, but only held a security interest in it.

**DISCUSSION**

As indicated, the Trustee makes two claims for relief in this proceeding, both based at least in part on the fact no new certificate of title for the manufactured home was ever issued after the Debtors assumed Mr. Suttles's ownership of the home and obligation on Green Tree's purchase-money loan to him. First, the Trustee contends he can avoid Green Tree's lien on the home using his avoiding power under § 544(a) of the Bankruptcy Code because, when the Debtors filed for bankruptcy, the lien had never been noted on a certificate of title showing the Debtors as the owners of the home and was

5

therefore not perfected. Alternatively, the Trustee contends the Debtors' transaction with Mr. Suttles was fraudulent and void because no certificate of title was ever delivered to the Debtors as required by K.S.A. 58-4204(h).

*a. Summary judgment standards*

Under the applicable rules of procedure, the Court is to grant summary judgment if the moving party demonstrates that there is "no genuine issue of material fact" and that the party "is entitled to a judgment as a matter of law."[3] The substantive law identifies which facts are material.[4] A dispute over a material fact is genuine when the evidence is such that a reasonable fact finder could resolve the dispute in favor of the party opposing the motion.[5] In adjudicating disputes, bankruptcy courts usually fulfill both the judicial function and the fact-finding function. In deciding a summary judgment motion, though, the Court is limited to its judicial role, not weighing the evidence and resolving factual disputes, but merely determining whether the evidence favorable to the non-moving party about a material fact is sufficient to require a trial[6] at which the Court would act in its fact-finding role. Summary judgment is inappropriate if an inference can be drawn from the uncontroverted facts that would allow the non-moving party to prevail at trial.[7]

---

[3] Fed. R. Civil P. 56(c), made applicable by Fed. R. Bankr. P. 7056.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

[6] *Id.* at 249-52.

[7] *Id.* at 248.

6

The substantive law's allocation of the burden of proof also affects the Court's analysis of a summary judgment motion. The party asking for summary judgment has the initial burden of showing that no genuine issue of material fact exists.[8] But if the moving party does not have the burden of proof on a question, this showing requires only pointing out to the Court that the other party does not have sufficient evidence to support a finding in that party's favor on that question.[9] When such a showing is made, the party with the burden of proof must respond with affidavits, depositions, answers to interrogatories, or admissions sufficient to establish that a finding on the question could properly be made in the party's favor at trial.[10]

b. *Portions of K.S.A. 58-4204 on which the Trustee relies.*

In Kansas, perfection of a lien on a manufactured home is governed by the Kansas Manufactured Housing Act.[11] Under the KMHA, the Division of Vehicles of the Kansas Department of Revenue ("the Division") maintains official public records showing the ownership of and liens on manufactured homes.[12] The Trustee relies on certain portions

---

[8] *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir. 1993).

[9] *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

[10] *Celotex,* 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

[11] *See* K.S.A. 2005 Supp. 84-9-311(b) (security interests in property subject to certificate of title law may be perfected only by complying with certificate of title law); K.S.A. 58-4204 & 58-4204a (provisions of Kansas Manufactured Housing Act governing notation of liens on certificates of title for manufactured homes).

[12] *See* K.S.A. 58-4202(e) & (f); K.S.A. 58-4204; K.S.A. 58-4204a.

7

of one of the provisions of the KMHA, K.S.A. 58-4204, to support his claims. The portions he contends are relevant to his first claim are these:

> (c) Upon the transfer or sale of any manufactured home . . . by any person or dealer, the new owner thereof, within 30 days . . . from the date of such transfer or sale, shall make application to the division for the issuance of a certificate of title evidencing the new owner's ownership of such manufactured home. . . . An application for certificate of title shall be made by the owner of the manufactured home . . . and it shall state all liens or encumbrances thereon . . . .
> . . . .
>
> (g) Upon sale and delivery to the purchaser of every manufactured home . . . subject to a purchase money security interest, . . . the . . . secured party may complete a notice of security interest and, when so completed, the purchaser shall execute the notice . . . . The . . . secured party may . . . mail or deliver the notice of security interest . . . to the division. The notice of security interest shall be retained by the division, until it receives an application for a certificate of title to the manufactured home . . . and a certificate of title is issued. The certificate of title shall indicate any security interest in the manufactured home . . . . The proper completion and timely mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the manufactured home . . . .
> . . . .
>
> (i) When a person acquires a security agreement on a manufactured home . . . subsequent to the issuance of the original title on such manufactured home . . . , such person shall require the holder of the certificate of title to surrender the same and sign an application for a mortgage title in such form as prescribed by the director. Upon such surrender, the person shall immediately deliver the certificate of title, application and a fee of $10 to the division. Upon receipt thereof, the division shall issue a new certificate of title, showing the liens or encumbrances so created . . . . The delivery of the certificate of title, application and fee to the division shall perfect such person's security interest in the manufactured home . . . described in the certificate of title. . . .

Subsection (c) indicates the Debtors were supposed to apply for a new certificate of title soon after they bought the home from Mr. Suttles. If subsection (g) applied to the Assumption Transaction, it suggests that Green Tree could have had a notice of security interest completed in connection with the transfer of the home from Mr. Suttles to the Debtors, and then mailed the notice to the Division and thus perfected its security interest

8

in the home. If subsection (i) applied to the Assumption Transaction, then Green Tree was supposed to require the holder of the certificate of title that had been issued to Mr. Suttles to surrender it to Green Tree, require the holder to sign an application for a mortgage title, and immediately deliver the certificate, the application, and a fee to the Division.

For his other claim, the Trustee relies on subsection (h) of K.S.A. 58-4204, which reads in relevant part:

> (h) In the event of a sale or transfer or ownership of a manufactured home . . . for which a certificate of title has been issued, which certificate of title is in the possession of the transferor at the time of delivery of the manufactured home . . . , the holder of such certificate of title shall endorse on the same an assignment thereof, . . . and the transferor shall deliver the same to the buyer [within 30 days] after the time of delivery. The sale of a . . . manufactured home by a manufactured home dealer without such delivery of an assigned certificate of title is fraudulent and void . . . .
> The buyer shall then present such assigned certificate of title to the division, and a new certificate of title shall be issued to the buyer upon payment of the fee of $10. . . .

Subsection (h) indicates that within 30 days of his sale of the home, Mr. Suttles was supposed to assign his certificate of title to the Debtors and deliver the certificate to them. The Debtors, in turn, were then obliged to present the assigned certificate to the Division and apply for a new title.

*c. Perfection of Green Tree's lien*

The Trustee concedes Green Tree's lien on the home was properly perfected when Mr. Suttles originally bought the home in 1999. He also appears to concede the lien was still perfected in February 2002 when Mr. Suttles transferred the home to the Debtors. Because no new certificate of title in the Debtors' names was ever issued after the

9

Assumption Transaction, though, he contends Green Tree's lien became unperfected and subordinate to the rights of a lien creditor,[13] a status conferred on the Trustee by § 544(a)(1) of the Bankruptcy Code. Because the lien was unquestionably perfected at one time, the Court believes the Trustee has the burden of proving that the perfection somehow lapsed or was terminated later.

The Trustee argues that the Debtors gave Green Tree a separate security interest in the home when they bought it from Mr. Suttles, and that Green Tree had to perfect this new security interest separately, which it failed to do. But even if the language in the Truth-in-Lending-Act disclosures box on the Assumption Agreement could somehow be construed as a security agreement granting a new security interest to Green Tree[14] and the Trustee can avoid that new security interest because Green Tree took no action to perfect it after the Assumption Transaction was completed, the Trustee's interest in the manufactured home would still be subordinate to the already perfected lien that Mr. Suttles had granted to Green Tree several years before he transferred the home to the Debtors. The Assumption Agreement clearly said the transfer was subject to that lien, so the Trustee must be able to defeat that lien in order to make the bankruptcy estate's interest in the home superior to Green Tree's interest in it.

---

[13]*See* K.S.A. 2005 Supp. 84-9-317(a) (unperfected security interest is subordinate to rights of lien creditor).

[14]Because the language stating that the Debtors were granting Green Tree a security interest appears in the Truth-in-Lending-Act disclosures box on the Assumption Agreement, the Court suspects the TILA might have required the language to be included to make sure the Debtors understood that Green Tree would have a lien on the home they were buying, even though its lien would be one that Mr. Suttles had previously granted, rather than a new one they were granting in the Assumption Transaction.

10

The Trustee does not suggest anything in the Kansas Manufactured Housing Act expressly terminated the perfection of the lien that Mr. Suttles gave to Green Tree. Instead, the Trustee asks the Court to infer that by requiring the new owners, the Debtors, to apply for a new certificate of title showing them as the owners of the home, the Kansas legislature intended to cut off the lien perfection that had been accomplished before the Assumption Transaction took place. He suggests the KMHA's purposes would be thwarted if "the requirements for re-titling so as to show the current owners could be ignored without penalty." He does not explain why the penalty for the *Debtors'* failure to apply for a new title should be the termination of perfection of *Green Tree's* lien on their manufactured home. Unless something in the KMHA required Green Tree to make sure that a new title was obtained in the Debtors' names, the Court would not be willing to punish Green Tree for the Debtors' failure.

The Trustee does argue that K.S.A. 58-4204(i) required Green Tree to obtain the certificate of title that was issued in Mr. Suttles's name and deliver it to the Division, along with an application for a mortgage title. But that provision applies only "[w]hen a person acquires a security agreement on a manufactured home . . . subsequent to the issuance of the original title on such manufactured home . . . ." The Court believes this could apply only to the separate security interest the Trustee contends the Debtors gave to Green Tree in the Assumption Transaction. Green Tree, however, is relying on the security interest that Mr. Suttles gave it in 1999, before the original title was issued showing him as the owner of the home. Subsection (i) did not apply to that lien.

11

The Trustee has not been able to find any Kansas or Tenth Circuit decisions addressing the questions he raises here, but asks the Court to follow the Sixth Circuit's decision in *Byron Center State Bank v. Tibble (In re Thrush)*.[15] In that case, the owner of a manufactured home subject to a bank's lien sold the home to a buyer who financed his purchase through the same bank.[16] On the original owner's certificate of title, the bank executed a lien release and simultaneously entered its name as the holder of a new lien on the home.[17] The buyer received that title but did not apply for a new title until after he filed for bankruptcy; the new title he received showed the bank as the lienholder.[18] The Sixth Circuit ruled the bank's lien was not perfected when the buyer filed for bankruptcy, because Michigan law required the bank as the holder of the security interest in the home to cause the certificate of title and an application for a new title to be filed with the appropriate state agency.[19] The Circuit rejected the district court's theory that the lien notation on the original owner's certificate of title was valid until another title application was delivered to the state agency.[20]

*Thrush* is factually distinguishable from the case before this Court in two

---

[15] 388 F.3d 195 (6th Cir. 2004).

[16] *Id*. at 196.

[17] *Id*.

[18] *Id*. at 196-97.

[19] *Id*. at 197.

[20] *Id*.

12

important respects: (1) Green Tree did not execute a lien release in connection with the Assumption Transaction and still has not released its lien[21]; and (2) the Debtors did not finance their purchase of the home with a new loan, but simply assumed Mr. Suttles's obligations under the existing loan and security agreement. *Thrush* is legally distinguishable, too. If the Court agreed with the Trustee that K.S.A. 58-4204(i) required Green Tree to submit an application for a new title as a result of the Assumption Transaction, the Court might be more inclined to consider *Thrush* persuasive here. However, since Kansas law did not require Green Tree to file anything with the Division as a result of the Assumption Transaction, the *Thrush* reasoning is not applicable in this case. Unlike Michigan law, Kansas law required the Debtors, not Green Tree, to apply for a new title as a result of the Assumption Transaction.

The Trustee argues that subsection (g) of K.S.A. 58-4204 authorized Green Tree to send a notice of security interest to the Division. However, since the lien that Mr. Suttles gave Green Tree was already noted on the only title that had been issued for the home and the Debtors bought the home subject to that lien, the Court does not believe Green Tree was required to send a notice of security interest to the Division in order to maintain the perfection of that lien. Instead, a notice of security interest is required only to perfect a purchase money lien that has not already been noted on a certificate of title that has been issued for a manufactured home. In this case, the Division's records showed that Green

---

[21] This Court's decision in *Morris v. St. John Nat'l Bank (In re Haberman)*, 2004 WL 2035341 (Bankr. D. Kan. Apr. 14, 2004), is similarly distinguishable because the bank in that case had executed a lien release.

13

Tree held a lien on the home, and the only issued certificate of title for the home had Green Tree's lien noted on it. No evidence has been presented to show that Green Tree ever executed a release of the lien Mr. Suttles gave it, and nothing about the Assumption Transaction suggests that Green Tree would have done so. Nothing before the Court indicates Green Tree either took any action or failed to take any required action that left open a way for someone to obtain a certificate of title from the Division that did not include a notation of Green Tree's lien. The Court concludes Green Tree's failure to submit a notice of security interest after the Assumption Transaction did not cause its prior lien perfection to lapse or terminate.

Courts applying the Kansas statutes governing certificates of title for vehicles and liens on them have declared that notation on the certificate of title is the only way to perfect a security interest in a vehicle,[22] a requirement that ensures the reliability of selling vehicles by assigning their titles,[23] because potential buyers can rely on the titles to show whether any liens exist that they need to worry about. Although certificates of title for manufactured homes and liens on them are now governed by the Kansas Manufactured Housing Act, rather than the statutes governing vehicles, this function of a

---

[22]*See In re Reed*, 147 B.R. 571, 572-75 (D.Kan. 1992); *Beneficial Finance Co. v. Schroeder*, 12 Kan. App. 2d 150, 152-54, *rev. denied* 241 Kan. 838 (1987).

[23]*See Mid American Credit Union v. Board of Sedgwick County Comm'rs*, 15 Kan. App. 2d 216, 223, *rev. denied* (1991) (allowing lien perfection without notation on title would endanger reliability of sales by title assignment).

14

certificate of title appears largely to have been incorporated into the KMHA.[24] The Court is convinced Green Tree's lien remained perfected because no certificate of title was ever issued that did not show the lien and Green Tree never released the lien.

Finally, although, as the Court noted earlier, the Trustee has pointed to nothing in the KMHA that expressly terminates the perfection of a security interest when a manufactured home is transferred, the Court has discovered a provision that might be thought to do so. K.S.A. 58-4204(f) provides: "The fee for each original certificate of title shall be $10. The certificate of title shall be good for the life of the manufactured home . . . while owned or held by the original holder of the certificate of title." This could possibly be construed to have terminated all aspects of the certificate of title issued to Mr. Suttles, including its effect of perfecting Green Tree's lien, when he transferred the home. But the Court is not willing to take it so far. Instead, the Court believes it is nothing more than an additional effort to force the new owners of a transferred manufactured home to apply for a new title and pay the required fee. If subsection (f) were construed to invalidate all aspects of a certificate of title as soon as the property it covers is transferred, many manufactured homes that are sold after a certificate of title has been issued would remain indefinitely in a title-less limbo until the new owners get around to applying for a new title. This would hardly help to ensure the reliability of

---

[24]*See Morris v. Citifinancial (In re Trible)*, 290 B.R. 838, 841-44 (Bankr. D. Kan. 2003) (Nugent, C.J.) (though manufactured homes no longer covered by statutes governing certificates of title for vehicles, notation of lien on title remains exclusive method for perfecting liens on such homes). *But see* K.S.A. 58-4214 (establishing procedure for eliminating certificate of title for manufactured home that has been permanently affixed to real property).

15

selling manufactured homes by assigning their titles.

Since the KMHA provides for the perfection of a security interest in a manufactured home by noting it on the home's certificate of title, the Kansas Uniform Commercial Code provides that perfection of such a security interest and the duration and renewal of perfection is governed by the KMHA.[25] Because the KMHA states that notation of a lien on the certificate of title for a manufactured home perfects the lien, but does not explicitly identify any subsequent event that terminates the perfection, the Court concludes the perfection continues until a new certificate of title is issued for the same home, unless the secured party executes a lien release before that occurs. Because Green Tree's lien was properly noted on the only certificate of title ever issued for the Debtors' home, and the Trustee has produced no evidence suggesting Green Tree ever released that lien, Green Tree is entitled to summary judgment declaring that its lien remained properly perfected after the Assumption Transaction occurred, and that the Trustee cannot avoid the lien.

*d. Validity of the Assumption Transaction.*

As an alternative ground for relief, the Trustee contends the Assumption Transaction violated subsection (h) of K.S.A. 58-4204 because no assigned certificate of title was delivered to the Debtors within 30 days of the transaction, making the transaction "fraudulent and void." The Court has found nothing in the materials

---

[25] K.S.A. 2005 Supp. 84-9-311(a)(2), (b) & (c).

submitted that shows Mr. Suttles failed to assign his certificate of title to the Debtors, but Green Tree has not contested the Trustee's assertion that Mr. Suttles failed to deliver the certificate to the Debtors, so perhaps the parties have evidence establishing that point. The fact no new certificate of title was ever issued does not mean the original title was never delivered to the Debtors. For purposes of this summary judgment ruling, though, the Court will assume Mr. Suttles never delivered an assigned certificate of title to the Debtors.

The Trustee's claim that the Assumption Transaction was void can be resolved by interpreting subsection (h) of K.S.A. 58-4204, which provides:

> (h)  In the event of a sale or transfer of ownership of a manufactured home . . . for which a certificate of title has been issued, which certificate of title is in the possession of the transferor at the time of delivery of the manufactured home . . . , the holder of such certificate of title shall endorse on the same an assignment thereof, . . . and the transferor shall deliver the same to the buyer at the time of delivery to the buyer of the manufactured home . . . , or [within 30 days] after the time of delivery. *The sale of a . . . manufactured home by a manufactured home dealer without such delivery of an assigned certificate of title is fraudulent and void . . . .*
> The buyer shall then present such assigned certificate of title to the division, and a new certificate of title shall be issued to the buyer upon payment of the fee of $10. . . .[26]

The focal point of the Trustee's claim is the italicized sentence ("the Voiding Sentence"), which clearly declares that some sales of manufactured homes without delivery of an assigned certificate of title are void. The question is whether the Assumption Transaction is the kind of sale that it voids.

---

[26] K.S.A. 58-4204(h) (emphasis added).

Under the KMHA, the phrase "manufactured home dealer" is defined in K.S.A. 58-4202(g) to mean:

> any person who, for commission, money or other thing of value, is engaged in the business of:
> (1) Buying, selling or offering or attempting to negotiate a sale of an interest in manufactured homes . . . ; or
> (2) buying, selling or offering or attempting to negotiate a sale of an interest in manufactured homes . . . for other persons as an agent, middleman or negotiator; or
> (3) bringing together buyers and sellers of manufactured homes . . . .

Green Tree is not a manufactured home dealer. The Court believes that Aetna Mobile Home Sales was acting as a "manufactured home dealer," as defined by this provision, in connection with the Assumption Transaction, but that it was not selling the manufactured home as described in subsection (1) of the definition. Aetna either acted as an agent, middleman, or negotiator as described in subsection (2), or just brought Mr. Suttles and the Debtors together as described in subsection (3). The definition recognizes a distinction between a person who is directly selling homes the person owns (subsection (1)), and a person who is selling homes for others (subsection (2)), or simply bringing sellers and buyers together (subsection (3)).

Combining the Voiding Sentence with the broad definition of "manufactured home dealer" stated in K.S.A. 58-4202(g), the Trustee asks the Court to construe the Voiding Sentence to mean any sale in which a manufactured home dealer participates in any way and no assigned certificate of title is delivered is fraudulent and void. This expansive construction would give the Voiding Sentence an effect very similar to a provision in the

18

certificate of title statutes for vehicles which declares the sale of a vehicle without an assignment of title to be fraudulent and void without regard to who is selling the vehicle.[27] There can be no doubt, though, that unlike the vehicle-sale voiding provision, the Voiding Sentence was intended to allow some sales of manufactured homes to be valid even though no assigned certificate of title is ever delivered.

The Court is convinced the Kansas legislature intended to limit the reach of the Voiding Sentence more than the Trustee claims. Up to the Voiding Sentence, subsection (h) identifies the party who is to assign the certificate of title as the "holder" and the "transferor" of both the title and the manufactured home. Given that context, the Court is convinced the Voiding Sentence should be limited to situations where the dealer is that holder and transferor, and construed to exclude situations like the one involved in this case where the participating dealer is not the actual owner-seller of the home. This construction also sensibly limits the voiding of transfers to those situations where the dealer itself is the party who must assign the title and deliver it to the buyer, and excludes those where the dealer could only tell the owner-seller to do so. The potentially harsh consequences of voiding a sale of a manufactured home long after the fact — here, the Trustee claims he can recover all the payments the Debtors made on the home under the Assumption Agreement from February 2002, when they bought it, to the present — add an equitable ground to support the narrower construction of the provision. Consequently,

---

[27]*See* K.S.A. 2005 Supp. 8-135(7).

the Court concludes the Assumption Transaction was not void, even if Mr. Suttles never delivered the title to the Debtors. Green Tree is entitled to summary judgment declaring that the Trustee cannot recover payments the Debtors made to Green Tree under the Assumption Transaction.

**CONCLUSION**

For these reasons, the Court is convinced: (1) Green Tree's lien continued to be properly perfected after the Assumption Transaction, so the Trustee cannot avoid the lien; and (2) even if Mr. Suttles did not deliver an assigned certificate of title to the Debtors, the Assumption Transaction was not fraudulent and void under K.S.A. 58-4204(h). Consequently, Green Tree's motion for summary judgment will be granted, and the Trustee's cross-motion for summary judgment will be denied.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by FRBP 9021 and FRCP 58.

# # #